OSTERHOF *v.* GRAND HAVEN STATE BANK.

CANCELLATION OF INSTRUMENTS—DECLARATION OF TRUST EXECUTED IN IGNORANCE OF LEGAL EFFECT IS SET ASIDE.

A declaration of trust, executed by a man 52 years old, by which he yielded up control for all time of an inheritance of $10,000, and was to receive $50 per month, or more in the discretion of the trustees, in case of sickness or other extraordinary necessity, is set aside, where it appears that he was illiterate and unfamiliar with legal documents, and that the document in question was executed by him in ignorance of its legal effect.

Appeal from Ottawa; Vanderwerp (John), J., presiding.    Submitted April 13, 1927.    (Docket No. 86.)    Decided June 6, 1927.

Bill by John Osterhof against the Grand Haven State Bank and others to set aside a declaration of trust.    From a decree dismissing the bill, plaintiff appeals.    Reversed, and decree entered for plaintiff.

Cancellation of Instruments, 9 C. J. § 22; Trusts, 39 Cyc. p. 88.

*Charles E. Misner,* for plaintiff.

*Hugh E. Lillie,* for defendants.

SHARPE, C. J.    The plaintiff, a man 52 years of age, received approximately $10,000 worth of securities under the will of a deceased sister.    He was named executor in the will, but declined to act.    John A. Schaub was appointed.    Schaub knew that plaintiff was at times in the habit of drinking to excess and spending his money, and suggested to him that it would be a good thing to have the defendant bank invest his money for him.    Plaintiff consented, and Schaub drew and plaintiff executed the following instrument on November 6, 1925:

"STATE OF MICHIGAN—In the Probate Court of said County.

"I, John Osterhof, of Ferrysburg, hereby authorize probate court for the county of Ottawa to appoint the Grand Haven State Bank, or some other suitable person, as trustees of my personal estate consisting of certificates of deposits, Liberty bonds, and money raised from the sale of stock of groceries and merchandise, with full power and authority to invest and reinvest said moneys into interest-bearing first mortgage bonds, and to pay me from the proceeds thereof the sum of fifty dollars ($50) or thereabouts each month one year from date hereof.    It being agreed and understood that said trustees may pay me more than fifty ($50) dollars a month in case I should become sick or needed more money."

The instrument signed by plaintiff was turned over to the bank, and it receipted to Schaub on November 16th for $4,000, and on December 1st for $5,800.    The officials of the bank were advised that it could not act as a trustee, and its cashier delivered the writing to its attorney, who prepared and plaintiff signed the following instrument:

## "DECLARATION OF TRUST.

"I, John Osterhof, of the village of Ferrysburg, Ottawa county, Michigan, do hereby make, constitute and appoint Albert E. Gale and Bernath P. Sherwood, as long as they shall be officers of the Grand Haven State Bank, of Grand Haven, Michigan, trustees for and in behalf of myself, said trustees to receive, acquire and take title to the sum of nine thousand eight hundred dollars to be delivered by me to said trustees for the purposes hereinafter stated and for no other purpose and said trustees are hereby empowered and directed to do any act in regard to the investing, handling and disbursing of said fund subject to the following conditions and directions.

"1. Said sum of money and all accumulations thereto shall be invested in bonds and other interest-bearing securities which securities shall be legal investments for State banks and trust companies under the laws of the State of Michigan.

"2. Said trustee shall pay to me the sum of fifty dollars or thereabout each month for my support and maintenance commencing one year from date hereof and in their discretion may pay me a larger amount in case of sickness or other extraordinary necessity.

"3. This trust shall continue for the term of my natural life and shall not be revocable by me.

"4. In case of my death said trust fund shall be paid to my executor or administrator and in case I die testate said fund shall go as directed in my will, otherwise to my heirs at law.

"5. In case said Albert E. Gale or Bernath P. Sherwood shall cease to be officers of the Grand Haven State Bank or either one of them shall cease to be such officer, their or his duties as such trustee shall terminate and I hereby empower the then board of directors of said Grand Haven State Bank to designate one of its other officers to act in his place and stead as such trustee.

"In witness whereof I, the said John Osterhof, have hereunto signed this declaration of trust the 4th day of December, A. D. 1925.

"JOHN OSTERHOF.

In presence of:
HENRY J. VERHOEKS,
LOUIS VAN SCHELVEN."

About two weeks later, plaintiff called at the bank and demanded the money. The trustees at that time had made no investment with it. On their refusal to deliver it to him, he filed this bill to compel such action. From a decree dismissing the bill, he appeals.

The validity of a trust as thus created is assailed by plaintiff's counsel. We find no occasion to decide this question, as, in our opinion, the instrument was executed by the plaintiff in ignorance of its legal effect. The writing first signed by him at the suggestion of Mr. Schaub was easily understood. He thereby placed his inheritance in the hands of the bank for investment. We are satisfied that he had no different intent when he signed the declaration of trust. Mr. Gale, the cashier of the bank, stated that he had not talked with plaintiff about the matter until after the latter paper had been prepared. He testified:

"*Q.* You instructed your attorney to draw up some sort of paper that would cover the substance of this affidavit?

"*A.* Yes, sir.

"*Q.* And that's what Mr. Osterhof wanted?

"*A.* He was satisfied, as we had read it to him.

"*Q.* He was satisfied that it covered the substance of this affidavit and you so instructed your attorney?

"*A.* He didn't relate it to whatever was mentioned in that document, it was a complete new trust agreement.

"*Q.* That was what you instructed your attorney to draw up?

"*A.* What I did.

"*Q.* That attorney did draft another instrument and presented it to you?

"*A.* Yes. About a week after the attorney drafted it Mr. Osterhof came to the bank and signed it. He didn't know the contents of it until at the time he signed it. Before he signed it I and another read it over to him. I don't remember that I told him that he had signed one and might as well sign the other and I don't recollect telling him that it was the sense of the affidavit. I did not tell him at that time that

the only difference was that my name and Mr. Sherwood's were substituted for the bank.  The next time I saw Mr. Osterhof after he had signed the instrument he said he didn't understand it as I had explained it to him.  He said he wanted to break it.

"This was about two weeks after the execution of the instrument, but it may have been sooner.  I informed him that he could not touch the principal. * "The attorney for the bank was not present at the time this agreement was signed.  No one explained the legal effect of this instrument to Mr. Osterhof. We read it paragraph by paragraph and asked him if he understood what he was doing.  We feel that before we can turn this money back to Mr. Osterhof we ought to have a court order."

The conclusion reached by the trial court was based on his finding that the trust agreement was read over and fully explained to plaintiff and that he expressed his satisfaction with it.  The proof supports this finding.  But plaintiff was illiterate, unfamiliar with legal documents, and unappreciative of the legal effect of the instrument.

A man 52 years of age is by this document yielding up control over an inheritance of about $10,000, out of which he is to receive $50 per month, or more in the discretion of the trustees, "in case of sickness or other extraordinary necessity."  Realizing his weaknesses, he might well have agreed to the suggestion of Mr. Schaub that he authorize the bank to invest his money for him, but we cannot conclude from the proof that he intended to place this money beyond his control for all time and receive but the sums above stated.

It is urged that the trust provision is so manifestly in his interest that it should not be disturbed.  But the plaintiff had lived with his sister for 12 years before her decease.  She knew about his habits and his weaknesses better than any other person, and she not only made him the object of her bounty, but appointed

him the executor of her will to administer her estate. If he shall squander this money, she alone is to blame for not providing against such a contingency in her will.    The text and cases cited in 39 Cyc. pp. 88-91, and 26 R. C. L. pp. 1208, 1209, will be found instructive.

The decree is reversed and set aside.    One may be entered here granting plaintiff the relief prayed for. As we are satisfied the defendants acted in good faith, no costs will be allowed.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.